May it please the court. My name is Chris Nugent. I'm pro bono counsel with Holland & Knight for petitioner Edgar Lansina Pandilinan. We'll refer to him thereafter as Edgar for ease of reference. I'd like to reserve three minutes for rebuttal. Edgar is a preoperative transsexual detained in Eloy, Arizona, for over four and a half years, currently suffering from post-traumatic stress disorder. We're here today because if Edgar is removed, if the removal order stands, she faces imminent harm in the Philippines. By the government and groups the government cannot or will not control, including rape, torture, beatings, or death, on account of her identity and status as a preoperative transsexual. We wish to bring to the court's attention three egregious errors underlying the proceedings which adversely affected Edgar's statutory and constitutional due process rights to a fair hearing, which warrant remand. As background, Edgar established through his credible testimony that he had dressed in women's clothing since age 12, always wanting to be a woman. Consequently, he was attacked over 30 times. Slow down a little bit. Thank you. I know you've only got ten minutes. Okay. Once in 1996, he was raped by five men and left bloody and for dead. The police, instead of protecting Edgar after being raped, they sexually assaulted him, fondling his genitalia, and rebuked him for not acting like a man. The three major errors warranting remand, in our opinion, to highlight are the following. The immigration judge violated his statutory duty to develop the record because the immigration judge delegated direct examination in its entirety to the trial attorney. Edgar was prejudiced because a trial attorney labored under a fundamental conflict of interest in prosecuting Edgar and could not conduct direct examination in a neutral, objective fashion, let alone under the standards for private counsel to zealously advocate for the respondent. Most of the trial attorney's questions, you will see in the record, were leading. The trial attorney failed to further elicit relevant facts and circumstances that would go to nexus for the 30-plus instances of persecution that Edgar allegedly suffered. The trial attorney could and should have recused him or herself from the role of playing the advocate in these proceedings. We know of no other court where you can delegate direct examination to a prosecuting attorney, and it raises serious ethical considerations. Kennedy, you can let the prosecuting attorney or let the immigration attorney, I guess it's the oil attorney, question the witness. Your point isn't that, I assume, isn't that that ordinary process can't continue, but that in addition you want the immigration judge to fill out the record. Yes, Your Honor. The immigration judge by statute under 8 U.S.C. 1229A. It's really just that he didn't exercise his function, as you see it, of asking questions himself to fill out the record. Exactly, Your Honor. He didn't ask any questions until there was confusion over Edgar's sexual orientation, and then he realized there was a need for a Tagalog interpreter, the Filipino language. And at the end, he just asked Edgar, do you have any further anything else to tell the court? That was it. There was no other interjections during the individual hearing. And so the trial attorney had free rein to just, you know, ask question after question. But the question was the question. So just if this – I want to make sure I'm clear. You have not appealed the asylum determination, is that right? We've waived the asylum determination. We're focusing on withholding of removal and withholding under convention against torture, Your Honor. And if it were determined that there was a violation, once it was determined that there was a language problem, then this would go back solely on withholding and CAT? Yes, Your Honor. Solely on withholding and CAT. But in this case, the Respondent would be – Edgar would be represented by pro bono counsel to zealously advocate for him, and we would avoid the issue of the immigration judge violating his statutory duty by delegating the direct examination to the trial attorney, which was basically a cross-examination. The second issue is that contrary to the BIA, there is no substantial evidence to uphold the immigration judge in the BIA's decision where they found that the government could protect Edgar because the majority of his experiences were with civilians. Edgar actually testified that most of his experiences were with civilians, but that would indicate that there were other experiences of abuse by the actual authorities. And in the motion to remand, we included his affidavit where he discusses his actual rape by the police officers, but that in the motion – that was not considered. It was considered previously available, which we can discuss later. But so in that – and furthermore, the sexual assault that Edgar experienced after the rape where he was – his genitalia was fondled by a police officer supposedly to protect him, that constitutes past persecution unto itself, and therefore, that should be remanded with a rebuttable presumption of future persecution that the government can strive to rebut. And finally, regarding the language issue, half of the proceedings were conducted in English, and then the judge realized that Edgar was not comprehending English effectively. And it was clear from the master calendar hearing, if you look at the record, Edgar would keep on asking, what do you mean? Even when the word issue was raised, when the judge referred to the word issue, he said, what does that mean? When the trial attorney asked him, do you recall, he said, what does that mean? Finally, Edgar told the judge, well, I speak English, but I don't fully understand it, and that's when the judge ended up assigning a new interpreter. But we would posit that the judge should have struck the entire record of the previous – the previous hearing and started the hearing de novo from there when the interpretation issue was identified. And so our – we would contend that each of these errors warrants remand unto itself, but the totality of these errors, the improper delegation of authority to the trial attorney, the lack of evidence supporting the decision given the fact that there was past persecution by the government, and the client's lack of comprehension of English and the lack of a provision of an interpreter from the get-go, all of that makes a compelling case for remand for Edgar, who's an indigent, pro se, detained, preoperative, transgendered individual whose rights need to be protected by an immigration judge that is committed to developing the record properly. Thank you kindly for listening, and I look forward to your questions. Well, you may have to look forward for a while. We'll give you three minutes for rebuttal. Why, thank you, Your Honor. Okay. Morning, Your Honors. May it please the Court. Jen Esponzo on behalf of the Respondent. Just to point out from the start, Judge Reinhart, that would not have been an oil attorney before the immigration judge. It would have been DHS, just for the sake of clarity. Is that good or bad? I'm sorry? Is that good or bad? Neither. Just a point of clarification. Are you from oil? Yes. Yes. We are. We represent DHS. Thank you. After Petitioner was placed in removal proceedings after her first controlled substance conviction, she was granted cancellation of removal in May of 2005, and at that time did not seek asylum. After Petitioner's second controlled substance conviction in March of 2006 and the revocation of her cancellation of removal, Petitioner sought asylum and withholding of removal and enjoyed a full and fair hearing before the agency. Petitioner was granted numerous continuances over the course of her several hearings before the agency, such that her due process rights would be met. The record does not compel reversal. Well, tell us why it was okay to delegate to the immigration attorney. This was quite unusual. Why was it permissible? It is not what happened in this particular case. The immigration judge took great pains to explain to Petitioner how to file her asylum application, how to support that application, what she would need. Prior to one of Petitioner's many continuances, the immigration judge suggested We explained all that. We know. I think he was very courteous judge, but when it got down to the actual proceeding, he seemed to give up his function. Not at all. It's appropriate. How can you say that? DHS, after accepting Petitioner's explanation of the basis for her claim, proceeded to question Petitioner with respect to that claim. The immigration judge gave Petitioner the benefit of an interpreter. Through that interpreter, asked Petitioner whether she had understood her prior hearings, whether she Let's get to the real question, which is, when there are matters that could be brought out by defense counsel to complete a record, like, you know, why do you say the police are biased? Why did you say that most of the assaults were by civilians? You know, the kinds of questions that the unrepresented person would have asked, that counsel would have asked, isn't it the obligation of the immigration judge to complete that record and ask those questions that might be helpful to the applicant? In this case, the immigration judge met that burden. The crucial hearing was that at which the immigration judge arranged for an interpreter and took time to say No, no, but ask the questions we're talking about. Did the immigration judge ask those questions that would flesh out the record and bring out the Petitioner's full story? Yes. Those questions were asked. It was Petitioner's burden to demonstrate her eligibility. But let's take a real specific incident. The assault by the police officer, that was on the record. Okay. But a competent attorney or somebody or a judge trying to understand what actually happened would then see if there was a link between that and what happened later and whether, you know, that was a police officer that did a sexual assault on this person. But none of that was asked. It was like the assault, which nobody disputes, was over here in outer space. So why wouldn't the I.J. have some obligation to explore what was obviously a government-induced attack? Well, perhaps it's helpful to remember that the record here is split. We have the evidence in support of Petitioner's applications up until the Board's decision dismissing her appeal. And then we have the record as it exists subsequent to the filing of Petitioner's motion to reopen. In Petitioner's affidavit, in support of her asylum application, she indicated that she had suffered mistreatment and threats at the hands of groups of unknown individuals and that she had been mauled many times and reported those incidents to the police. We also have Petitioner's recollection that at age 12, a female officer did, in fact, mistreat her. During Petitioner's testimony, we have a similar recollection that Petitioner was assaulted, mistreated while in the Philippines. We have Petitioner's claim that in 1996, five guys assaulted her. Petitioner characterized these individuals as unknown civilians and did not report the incident to the police. We also have Petitioner's submission of the police reports memorializing occasions on which the police had taken the time to document her concerns, to generate a report. That's inconsistent evidence that's emerging. And that raises maybe the second issue in the case, and that has to do with half of this proceeding is conducted in English without a translator, and a lot of that related to the teenage years and some of these events. And then you get a translator in there. So you have, at best, a kind of a jerry-rigged proceeding as a result of the translation. Why wouldn't we just send it back and let this individual have a straight-up hearing with a translator? Well, to answer the first part of your question, the benefit of that translator is that we do have Petitioner on the record confirming that her testimony, as it's been taken, is accurate and it's correct and her application is complete and representative of her claims. To answer the second part, Petitioner did have the benefit of pro bono counsel when her appeal was filed with the board. Her merits. That doesn't help her at the hearing. I mean, it's an odd thing. Well, here's what she says. You know, she speaks but does not really understand English. And in that hearing, through the interpreter, she confirmed to the immigration judge that she had understood the questions asked of her. There was not. Well, how could she understand the questions when she doesn't know all of that? I mean, it was never really you don't really have a clean hearing. That's my concern. Correct. And I don't know why the Department fights so hard in these cases when you could just have a redo in a case. You know, we're not saying that there is persecution or not persecution, but why not just have a fair hearing? What's the objection to that? We do have those instances where the necessity of a fair hearing is achieved and those cases go back. This is not that case. Even taking Petitioner's representations alone from her affidavit in support of her asylum application up until her motion to reopen, it's simply not a consistent evolution of the facts of her case. At each point, her story changes. Our problem is you've got procedural problems and you're arguing substance. We're interested in the procedural fairness. And to tell us the facts of this or that, that doesn't help you very much. Well, the procedural failings, in fact, do help us. We've stepped through Petitioner's proceedings as far as the Board's decision. Petitioner came back with her motion to reopen and motion to reconsider, represented by counsel, and at that time, for the first time, produced evidence which clearly does suggest a different story and a very compelling story. That evidence is simply not previously unavailable. The Board was entirely correct to deny Petitioner's motion to reopen on that basis. May I ask you just a quick, because I want to say, she did say in her application, her asylum application, about the female officer who told her that she should quit being trained to be a female and, you know, that whole thing, you're a handsome male and you ought to try putting your penis in a hole and put her hands in to touch her penis. It's egregious. There's no question. All right. Now, did the ---- she didn't testify about that, did she, at the hearing? Petitioner's testimony is at points difficult to understand, but ---- All right. Did the immigration judge ask her about that incident, bring it out, ask her to explain it, exactly what happened? Yes. In conjunction with the discussion of the police report submitted by Petitioner. Absolutely. The ---- perhaps the troubling line ---- The immigration judge did or the immigration attorney? The immigration judge, I believe. I want to ---- Give us the record. Where in the record does that happen? We have the exhaustive guidance provided to Petitioner. Well, you type in the page in the record where that happens. Where he asks her about what happened. Where she really goes into that. Well, he brings out the facts and makes it a complete record. Let's see. Well, we have the immigration judge's questioning at page 488. Yes. Regarding who had assaulted. I see that my time has run. May I? No, no. Go ahead. Okay. Again, perhaps the easiest answer is that the questioning was done jointly between DHS and the immigration judge. It's not the government's contention that the immigration judge at some point did stop and say, okay, please explain that point that you just made. But that's not this Court's inquiry. No. The inquiry is whether he did his job of filling out the record and going into probing to see that he has a complete record, the kind of thing that would be done by the defense attorney or by the Petitioner's counsel. It's our position that through the numerous assurances and ---- The numerous what? Assurances and points of guidance provided by the immigration judge in helping Petitioner to file this asylum application, that duty was met. He did what? To help her file an application? By granting six continuances, by instructing Petitioner to ---- No, that's not correct. We're really more concerned about the hearing that took place, not the papers that got us to the hearing. Correct. And the standard by which that is judged is to see whether the record compels reversal of the immigration judge's determination. It simply does not. That's not the standard when we're looking at a fundamental procedural error. Correct. Because, I mean, we're not talking ---- if we say we don't know whether it compels it substantively, but the question is, is there even a hearing record here that's a sensible hearing record that we can fully rely on to even make that determination? That's really the issue. And there is. The possibility of drawing perhaps two different conclusions from some of what's in this record as judged against Petitioner's subsequent arguments in her motion to reopen doesn't compel reversal. It doesn't indicate that there was something fundamentally defective with respect to Petitioner's proceedings. To the contrary, we have every assurance, six continuances, that Petitioner did receive a full and fair hearing. Okay. Thank you very much. Thank you, Your Honor. Good morning. First and foremost, Your Honor, the Department of Homeland Security Immigration and Customs Enforcement is the agency that prosecutes aliens with the goal of seeking their removal. The Office of Immigration Litigation is a branch of the Department of Justice, which represents the Board of Immigration Appeals. So I think there's a little distinction there. On page 478, you were asking who was the one who asked, you know, who assaulted you. It was the trial attorney on page 478 of the transcript. The question by the trial attorney at the hearing is, well, in your affidavit, you say you went to the police and a female police officer placed her hand down your pants. Do you remember that? Yes, that did happen to me when I went home in 1996. And then, but the judge never asked any questions about that sexual assault and never referred to the sexual assault later on in the proceedings. In terms of commandeering the proceedings, just to give you a sense, on page 440, Edgar refers to these guys calling me and said bad names, and then they come to me and they beat me up. What does the trial attorney do afterwards? Segues completely and doesn't follow up on the questions. And I think that's, you know, because it's not the trial attorney's normal role to tease out the who, what, where, when and why and how of each instance of persecution to prove nexus. The burden of proof is on the alien. So the trial attorney is in a very awkward position with this fundamental conflict of interest. Well, it's not the trial attorney's function to fill it out. The question is whether there was information to be filled out, and the judge failed to do that. The trial attorney is not supposed to play both roles. We would concur with that. The trial attorney did play both roles. The judge actually started that by saying on page 427 to Edgar, you're going to be asked a number of questions by the government attorney on your fear of return to your home country, right, sir? Then there were no questions from the judge until the language issue at the end of the first day of the hearing. And then at the end, it's the judge asking one question, do you have anything else you want to tell the court? And that's why. Are you saying that in between those two? No interventions. There's no intervention. There's no questions. No questions by the immigration judge. I think that oil attorney, one of the arguments as well, now you have some fancy affidavits that have come in on the motion to reopen, and those don't even jive with any story that was told during the hearing, so that collision in itself suggests that, you know, maybe it's no harm, no foul. I'm not quite sure what the argument is, but would you address that point? I would state that the judge and the Board of Immigration Appeals may, you know, made a credibility finding. The immigration judge made a positive credibility finding on the applicant, which was affirmed by the Board of Immigration Appeals. So the evidence that's coming in terms of the motion to reopen, that can be dealt with on remand in terms of any possible inconsistencies. We have a psychological evaluation now that shows that Edgar has been laboring under post-traumatic stress disorder. We had to find the psychologist to do that. Your client is in detention, is that right? He's been in detention four-and-a-half years in Eloy, Arizona, where he used to practice with the Florence Immigrant and Refugee Rights Project. So I know that facility well. In terms of the standard of previously unavailable evidence, I would say oil is taking a pretty bi oil and taking a hard line position of looking at previously unavailable as chronologically unavailable. In the context of a pro se detainee suffering from post-traumatic stress disorder in the middle of nowhere in Arizona in a detention center, how in the world was he going to be able to access that evidence? There has been no case law defining what previously unavailable means, so it should not necessarily be construed as chronological, but on a case-by-case basis, taking a look at the facts and circumstances of the particular alien. And there is Ninth Circuit case law, I think it's Coleman, which stands for the proposition that in cases of pro se detainees, the immigration judge has an enhanced responsibility to protect their rights. And that definitely didn't happen in this case, and I don't think we should be punished for actually doing due diligence and discovering evidence on behalf of Edgar. We did that as diligently as possible. We filed within the statutory period for a motion to reopen, which is 90 days. And the evidence was previously unavailable solely by virtue of Edgar's detention in Arizona, post-traumatic stress disorder, and being able to access the evidence. How else was he going to be able to get a psychologist and a human rights expert witnessed on the Philippines? What was your position on asylum? You said something at the start of your argument about that. We're willing to waive the asylum issue, Your Honor, and focus on withholding, because that's conferred to the immigration judge's discretion, and our client does have a criminal history. And there were alternative findings on asylum, right? The immigration judge denied asylum in his discretion because of the client's criminal history, which the client, which Edgar contends is related to all of the experience of abuse and mistreatment as a preoperative transgender individual in the Philippines. Thank you, counsel. Thank you.
judges: Reinhardt, Noonan, McKeown, Cjj